*446 Taydor, Chief-Justice
A person who receives a bank bill takes upon himself the. solvency of the Bank, but he who pays or exchanges it, guaranties the bill to be genuine. This is the general'Jaw of the land, subject to which the parlies must be presumed to have acted, if nothing passed between them at the time of contract.— But a witness was introduced in this case, who testified on behalf of the Defendant, that the latter told Plaintiffs agent at the. time of the contract, the agent who made it, that if he took the bill, he must do it .at his own risk. On the other hand, the Plaintiff’s agent, who made the contract, testifies that no such conversation passed, and that he did not even see the witness who deposed to it, present at the time.
Evidence was then offered on the part of the Defendant, of a conversation of the Defendant’s respecting this bill to wit, that of Mitchell, to whom he offered it $ if ho took it at par, it would be at his own risk ; if Defendant guarantied it he was to have a premium. This conversation is stated to have taken place in a store house, immediately before the conversation given in evidence by the Plaintiff’s agent, and in the absence of the Plaintiff and his agent. The record states this confusedly, and I have nearly transcribed it, but I understand it to have been, that the Defendant told Mitchell, he w’ould not guaranty it without a premium ; tliat if lie would not give a premium, he (Mitchell) must take the bill at his own risk.
This evidence was rejected by the Court, and the cptestion now presented is, was the evidence properly rejected or not. I am of opinion that it was properly rejected.
Without this evidence, and supposing the credibility of the two conflicting witnesses tobe equal, which I must take for granted, the case stands upon the legal implication, that the Defendant guarantied the bill and is liable to compensate the Plaintiff, since it turned out to be a counterfeit.
*447 It is a rule of moral, as well as of legal construction, that a contract is to be carried into execution in that sense, in which the promiser apprehended, at the time the promisee received it. It is not the sense, says a writer of much observation, in which the promiser actually intended it, that always governs the interpretation of an equivocal promise; because at that rate a man might excite expectations which he never meant, nor would be obliged to satisfy. Much less is it the sense, in which the promisee actually received the promise : for according to that rule, the promher might be drawn into engagements, which he never meant to undertake. It must therefore be the sense, (for there is no other remaining) in which the prutniser believed' that the promisee accepted his promise. And this, says he, will not differ from the actual intention of the promisee, where the promise is given without collusion or reserve. (Paley 96.
The application of this rule of natural justice appears to me to he decisive of this question. F- c which interpretation did Hawkins apprehend that Anderson put upon the contract? Clearly, as nothing passed between them in explanation, discharging Hawkins from his guarantee, and ¡¡lacing the risk on Anderson, Hawkins must have believed that Anderson expected to he indemnified, in the event of the note’s proving to be a counterfeit. But if this evidence is admissible, the rule is inverted, and Anderson is bound, not as Hawkins thought he conceived himself to be, but as a secret intention of Hawkins, which Anderson bad no means of exploring, designed lie should be.
It is argued in support of the admissibility of the evidence, that it is a fact connected witli the case — that the Jury may draw their own inference from it, and as the scales of evidence hang irt equilibrio, the introduction of this fact will make one of them preponderate.
But this argument is met by a stubborn, and most wise and salutary rule of law, that the acts and declarations *448 0f others are not admissible in evidence against any one, as affording a presumption against him, in the way of admission or otherwise. A man’s privity to the acts and declarations of another may authorize the inference of his assent, and operate as an admission against himself. But where he is utterly a stranger to them, no inference or presumption can justly be made against him, founded upon his own admission or conduct. Were this evidence admissible, Anderson would certainly be bound by the declaration and act of Hawkins, to which he was no wise privy, and to which if he liad been privy, the presumption is, ho would not have made the contract in the manner lie did. The only inference the Jury could derive from the evidence is, that Hawkins did not intend to guaranty the bill ; but it is not contrary to the most obvious principles of justice, that Anderson should be bound by the secret intentions of Hawkins, which intentions were contradicted by bis conduct ? The irrelevancy of the evidence is not the only objection to it, for fhat might do no other mischief, than needlessly consume time, hut its tendency is to impair the rights of Anderson, by the res acta between Mitchell and Hawkins.
The argument, that according to the ordinary motives of human conduct it is incredible that Hawkins should have passed (he bill to Anderson with a guarantee, when he had a few minutes before, demanded a premium for one, is answered in a manner satisfactory to my mind ; 'that to establish such a principle of e\ ¡deuce, would enable men, knavishly disposed, to create evidence for themselves, by making an offer to one person, different from a contract they would immediately afterwards make with anoiher, and then adduce such evidence to destroy the contract actually made, in every view I have been able to take of the case, I am compelled to believe that there ought not to be a new trial.
IIalij, Judge, concurred with the Chief-Justice.